[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested dissolution of marriage tried before the court at the Judicial District of New Haven.
The relevant portions of the complaint allege that the parties were married on October 30, 1982, that the parties have one minor child born to them on August 4, 1986, that the parties have resided in the State of Connecticut in order to confer jurisdiction upon the court. It is alleged that the marriage of the parties has broken down irretrievably. Those allegations of the complaint are found to be proven and true.
In support of their respective positions, the testimony of each of the parties was offered. The testimony of the plaintiff was that he is 48 years old. He is generally in good physical health but has suffered from depression and anxiety. He is taking medication for those conditions as well as for blood pressure. He has a bachelor's degree from the University of California at Berkeley, and a medical degree from Yale University. He is a pathologist, with concentration in tissue samples related to gastroenterology. The plaintiff testified that he is currently CT Page 7469 employed at Dianon Systems, Inc. He has been employed there for sometime, and has endured two layoffs during the period of his employment due to fluctuations in the volume of business that Dianon generates. His last layoff ended in December of 1998 at which time he was rehired on a per diem basis, and eventually on a full time basis as of April 1, 1999. His base salary is $159,600 per annum. He claims that he works close to six days a week and averages 55 to 60 hours per week. The plaintiff also testified that there is an incentive plan at work which allows him to earn extra money if he examines samples over and above a base number. The incentive pay is reflected on his financial affidavit as $12,168.00 gross per annum. He is currently earning the highest income of his career.
The plaintiff testified that he met the defendant in 1978 when he was living in California. He met her through his first wife who apparently was also a medical student. In 1981 the plaintiff went to Virginia in order to pursue his medical school education. While he was in the East, he went to New York City where he visited with Ms. Orrok, became intimate and fell in love. Ms. Orrok at that time had been accepted at the Yale Medical School. Through a set of circumstances, Mr. Gates was able to transfer from the Medical College of Virginia to Yale. When the parties were married in 1982, Mr. Gates testified that neither one had any assets to speak of. They each had some debt from their undergraduate studies, and he had some debt from his medical education in Virginia. During the early part of their marriage, Mr. Gates testified that his education was paid in part from loans, and in part by his family. He describes the years between 1982 and 1986 as being good years in their marriage. Prior to the birth of their child, they had made a mutual decision to have the child and attended child birth classes.
In the winter of 1986, while Mr. Gates was studying internal medicine, he experienced some "panic attacks". There was some indication that the attacks were related to an incident which took place in 1985 where Mr. Gates learned that he had been adopted, and that the person that he regarded as his father was not his biological father. Mr. Gates describes this discovery as having a profound effect upon him.
In 1990, the parties purchased a home in North Haven located at 90 Whitney Ridge. The purchase price of the home was $165,000.00. Improvements were made to the property including refinishing of floors, landscaping, roofing and paint. Mr. Gates describes those improvements as costing some $20,000.00.
In 1992, the parties sought out counseling for themselves. The counseling, which had a fairly lengthy history, was not successful. Not surprisingly, the parties' opinions differ as to their respective commitment to that counseling and the circumstances under which they CT Page 7470 stopped attending. In 1994 Mr. Gates suffered a major episode of depression. He was hospitalized at Hartford Hospital for some ten days. He says that Ms. Orrok was under the impression that she has saved him and that he was somehow owing to her. There arose difficulties between the parties, including disagreements as to whether Mr. Gates appropriately looked after his own psychological and physical health. Ms. Orrok was of the opinion that he did not and sought to intervene in those areas. Mr. Gates apparently was resentful of her intervention.
By 1997, the parties had separated within their own home and were staying in separate rooms. Finally, in July of 1998, the husband moved from the marital home. He lived with a friend until May of 1999 at which time he moved in with his present roommate and her daughter. Mr. Gates described that he became romantically involved with his present roommate in the fall of 1998, and he states that their relationship is not a contributing factor in the breakup of his marriage.
The defendant Barbara Orrok testified that she is 48 years of age. Her health is good except for some use of a mood stabilizer and Prozac which she has been taking for approximately six years. She is currently self employed as a psychiatrist with an office on State Street in New Haven. She has been self-employed since approximately 1996. Ms. Orrok's history of earnings has fluctuated since the marriage of the parties. For the most part, she earned more than the plaintiff from the time of the marriage until 1996, when the parties earned roughly the same, and in years following she earned less than the plaintiff. In both 1993 and again in 1998 Ms. Orrok earned $112,000.00, the former year while working for others and the latter while self employed. Those have been her highest income years to date. Her current financial affidavit indicates that her present income is approximately $85,000 per annum, based upon her 1999 earnings.
As previously mentioned, in 1990, the parties purchased a home in North Haven located at 90 Whitney Ridge. The purchase price of the home was $165,000.00. Mr. Gates described improvements costing some $20,000.00. Ms. Orrok states that she has spent approximately $35,000.00 on improvements to the real estate since July of 1998. She indicates that some of that money came in the form of a gift from her mother and the other is money that she has paid herself. Her estimate of the total improvements made to date is approximately $80,000.00. The improvements to the home are not justified from a financial standpoint.
There was extensive testimony elicited from Ms. Orrok as to her finances. Essentially, she operates her finances from two "CAP accounts" at First Union Bank. One of the accounts is used for business obligations, the other to pay her personal obligations. There is some CT Page 7471 mixing of funds in that some personal expenses are paid through the business, including but not limited to her life insurance premiums. Her CAP account for the year ending 1999 shows a total of $55,410.00 in personal expenses, which averages approximately $1,100.00 per week. The figure shown on her financial affidavit for weekly expenses is $1,835.00.
Ms. Orrok testified that she was three years ahead of Mr. Gates with respect to their training and education. It was her testimony that he enjoyed both his schooling and his training more than she. She indicates that she supported his training and encouraged him to pursue advanced training with the feeling that it would make him ultimately more desirable in the work market. Upon the completion of his education, it was her intention to cut back some of her hours in order to devote additional time to their child and to do some writing. Ms. Orrok also testified as to her education and her background including her employment history. Her curriculum vitae shows that she was educated at SUNY Albany, The University of Massachusetts, and The University of California at San Francisco. She completed her residency in psychiatry at Yale University School of Medicine. She is board certified in psychiatry and neurology. Ms. Orrok testified that her average work week consists of approximately 40-56 hours per week which includes seeing patients, conferring with other professionals, attending to her notes and paperwork and working with students and/or residents assigned to her from Yale. She formerly worked as a consulting psychiatrist to the Hill Health Center, but she lost that employment because she was replaced by a full time person at their option. Ms. Orrok represents that the loss resulted in a $37,600.00 shortfall in her income between 1998 and 1999.
It was Ms. Orrok's testimony that Mr. Gates was at different times irritable, withdrawn, secretive, and acted oddly. She does confirm that he was affected by the discovery that he had been adopted. She also states that she was supportive of him in every respect during this difficult time. At the time that Mr. Gates moved out, it was her understanding that the move was due to their arguments and his desire for "some space". It was her thought that the move was temporary. She said that she was dumbfounded when she discovered that the move would not be temporary, and when she found that he was seeing someone else. It is her claim that she remained committed to the marriage and that Mr. Gates gave up on the marriage because. of his anger, and his blaming her for his anger. It was also her claim that when Mr. Gates finally finished his training and obtained his full time job at Dianon Systems, he felt that he had grown up and was empowered to leave.
After having considered all the relevant statutory criteria, in addition to the briefs filed by both counsel dated May 22, 2000, the CT Page 7472 court orders the following:
The marriage of the parties is hereby dissolved.
The parties have submitted a stipulation as to custody and related matters dated April 14, 2000. The court has examined that stipulation, reviewed the statutory criteria, and the evidence presented at trial. The court finds that stipulation is appropriate in every respect, and accordingly orders that the stipulation be incorporated fully into the judgment as the court's orders as to custody.
The plaintiff shall pay to the defendant unallocated alimony and child support in the amount of $550.00 per week for a period of five years from the date of this judgment. Thereafter, he shall pay alimony in the amount of $200.00 per week for an additional five years. Alimony shall terminate upon the defendant's remarriage, cohabitation or the death of either party. The alimony shall not be modified as to term.
The court finds it is in the best interest of the child to continue in his present educational setting and accordingly orders the parties to continue paying the cost of the child's private school education on an equal basis as they have been doing.
Each party shall own free from any claim from the other their interest in their respective automobile. They shall be responsible for any debt, liability, and/or obligation associated with their respective vehicle. They shall further hold each other harmless as to those obligations.
The jointly owned real estate at 90 Whitney Ridge Terrance, North Haven, Connecticut is found to have a value of $160,000.00. The property shall be conveyed by quit claim deed by the plaintiff to the defendant. The defendant shall assume any and all debts and liabilities associated with that property and shall hold the plaintiff harmless thereon. The defendant shall own the furnishings and fixtures located within that home, except the personal property, clothing and personal effects of the plaintiff that have not otherwise been removed.
The plaintiff shall own, free from any claim whatsoever of the defendant, the furnishings which he purchased subsequent to his removal from the marital residence in July of 1998.
The parties shall each be responsible to pay their separate debts as listed on their financial affidavits. They shall hold the other harmless from any liability incurred as to those debts.
Each of the parties shall own such checking accounts, savings CT Page 7473 accounts, retirement and deferred compensation benefits as are listed on their respective financial affidavits.
Each party shall maintain insurance on their life in the amount of not less than $200,000.00, for the benefit of the minor child. The parties shall designate each other as trustee for the child for this purpose. In addition, the plaintiff shall maintain $100,000.00 of life insurance for the benefit of the defendant for so long as he is obligated to pay alimony under the terms of this judgment.
The plaintiff shall maintain medical insurance for the benefit of the minor child as same is available to him through his employment, or as available to him at a reasonable cost. The unreimbursed and uninsured medical expenses of the minor child, including but not limited to psychological, dental, orthodontic and vision shall be divided equally by the parties.
Each party shall be responsible for the payment of their own counsel fees.
Robaina, J.